**Ronald Wayne BREWER, Appellant,**

v.

**Crispus NIX, Appellee.**

No. 91–1220.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1991.

Decided May 8, 1992.

Philip B. Mears, Iowa City, Iowa, argued, for appellant.

Thomas D. McGrane, Des Moines, Iowa, argued (Bonnie J. Campbell, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Ronald Wayne Brewer, an Iowa prisoner, appeals from a judgment of the district court[1] denying his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Brewer alleges numerous errors which, he contends, deprived him of his constitutional right to a fair trial. We affirm.

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.

Brewer was convicted of murdering Clarence Edwards at his home on the evening of January 29, 1975. At the time of the murder, Brewer was serving a life sentence for another murder and had signed out of the Iowa Mens Reformatory, in the custody of his close friend, guard Herbert Pennock, to teach at a local high school. After they left the Reformatory, Brewer told Pennock that he wanted to escape that night with Mrs. Edwards, a prison employee. They went to Pennock's house and loaded a rifle and ammunition into the trunk of Pennock's car. Pennock drove Brewer to the Edwards house, dropped him off, and left after Brewer entered the house with the gun and ammunition.

Pennock then drove to the school, planning to wait fifteen or twenty minutes before reporting Brewer's escape. Approximately fifteen minutes later, Brewer returned to the car, claiming that Mrs. Edwards had panicked and that he had "busted" them.[2] Brewer ordered Pennock to drive him to Dubuque, where Brewer met an unknown acquaintance and drove away. He was eventually apprehended in Phoenix.

Pennock was charged with suffering a life prisoner to escape and perjury. He was granted immunity from those charges and became the State's principal witness at Brewer's trial. The State also presented evidence placing the time of death at about the time Pennock dropped Brewer at the Edwards house. Three young boys testified that they saw a man (whom one identified as Brewer) running past them a few minutes later at a point directly between the Edwards house and the school. Other testimony corroborated the State's case, including a bystander who heard a gunshot from the area of the Edwards house at about that time.

The jury convicted Brewer of first degree murder. He was sentenced to life in prison. The Iowa Supreme Court affirmed his conviction on direct appeal. *State v. Brewer*, 247 N.W.2d 205 (Iowa 1976). Fol-

lowing unsuccessful state post-conviction proceedings, *see Brewer v. State*, 444 N.W.2d 77 (Iowa 1989), Brewer filed this petition for federal habeas relief. The district court denied his petition, and he appeals.

## II.

■ At the time of Brewer's trial, an Iowa statute exempted people over the age of sixty-five from jury duty.[3] Brewer argues that this systematically excluded a distinctive group and therefore deprived him of his Sixth Amendment right to a jury composed of a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). The district court summarily rejected this claim on the ground that *Duren* may not be applied retroactively to this case. We disagree. The Supreme Court has expressly held that the constitutional standards of *Duren* are applicable "to juries sworn after the decision in *Taylor v. Louisiana*," 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *Lee v. Missouri*, 439 U.S. 461, 462, 99 S.Ct. 710, 711, 58 L.Ed.2d 736 (1979). Since Brewer's jury was sworn after the decision in *Taylor*, we must review Brewer's *Duren* argument on the merits.

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community...." *Duren*, 439 U.S. at 364, 99 S.Ct. at 668 (finding women a distinctive group). A distinctive group must be defined in terms of the purposes of the Sixth Amendment's fair-cross-section requirement:

(1) "guard[ing] against the exercise of arbitrary power" and ensuring that the "commonsense judgment of the community" will act as "a hedge against the overzealous or mistaken prosecutor," (2) preserving "public confidence in the fairness of the criminal justice system," and (3) implementing our belief that "sharing

---

**2.** Brewer was also indicted for murdering Mrs. Edwards but was never tried on that charge.

**3.** The only age qualification in the current Iowa statutes is that jurors must be at least eighteen years old. *See* Iowa Code § 607A.4.

in the administration of justice is a phase of civic responsibility."

*Lockhart v. McCree,* 476 U.S. 162, 174–75, 106 S.Ct. 1758, 1765–66, 90 L.Ed.2d 137 (1986), *quoting Taylor,* 419 U.S. at 530–31, 95 S.Ct. at 698.

Historically, many states have imposed maximum and minimum juror age qualifications. The Supreme Court accepted such provisions in pre-*Taylor* cases such as *Carter v. Greene County,* 396 U.S. 320, 332–34, 90 S.Ct. 518, 524–26, 24 L.Ed.2d 549 (1970), and *Franklin v. South Carolina,* 218 U.S. 161, 30 S.Ct. 640, 54 L.Ed. 980 (1910). Since *Taylor,* every circuit faced with the question has held that an excluded age category was not a distinctive group for Sixth Amendment purposes. *See, e.g., Silagy v. Peters,* 905 F.2d 986, 1009–11 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991) (age 70 and over); *Wysinger v. Davis,* 886 F.2d 295, 296 (11th Cir.1989) (age 18–25); *Ford v. Seabold,* 841 F.2d 677, 681–82 (6th Cir.), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988) (young adults); *Barber v. Ponte,* 772 F.2d 982, 996 (1st Cir.1985) (en banc), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986) (age 18–34); *United States v. Potter,* 552 F.2d 901, 905 (9th Cir.1977) (age 18–34); *United States v. Kirk,* 534 F.2d 1262, 1278 (8th Cir.1976).

Brewer failed to present any evidence at trial that people aged sixty-five and over are in fact a constitutionally distinctive group. Even at his post-conviction hearing, Brewer submitted only two expert affidavits opining generally that people over age sixty-five "on the average" manifest different ideas and attitudes than those in other age groups and that "the majority" of those over age sixty-five are physically able to serve on juries. We conclude that this falls far short of proving the type of distinctive group required for a prima facie case under *Duren.* The age parameters of the group are too arbitrary,[4] and its supposed distinctive characteristics are too general and ill-defined, to satisfy the *Du-*

*ren* standards. *Compare United States v. Lynch,* 792 F.2d 269, 271 (1st Cir.1986). In addition—and we think most significantly—Brewer has made no showing that this historically common exclusion deprived him of a fair and impartial jury or otherwise frustrated the purposes of the Sixth Amendment's fair-cross-section requirement. Accordingly, Brewer has failed to prove a Sixth Amendment violation.

## III.

■ Prior to Brewer's trial, the State disclosed that certain charges against Pennock had been dropped in exchange for his agreeing to testify. Brewer argues that the State nonetheless violated the Due Process standards of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it failed to reveal that Pennock would not be granted immunity until after he testified at Brewer's trial. According to Brewer, cross-examination as to this aspect of Pennock's deal "would have seriously affected Pennock's credibility" by showing the jury he had an incentive to testify against Brewer.

The district court found no *Brady* violation because Brewer was advised of Pennock's immunity and "extensive cross-examination disclosed the details of the plea agreement." We agree. In addition, given the vigorous cross-examination of Pennock about his prior felony conviction and other misconduct, there is no "reasonable probability" that this additional fact would have made a difference with the jury; thus, it was not material. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *United States v. Montoya,* 952 F.2d 226, 227 (8th Cir. 1991); *Orsini v. Wallace,* 913 F.2d 474, 480 (8th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1093, 112 L.Ed.2d 1197 (1991).

## IV.

■ Brewer argues that his Sixth Amendment confrontation right was violated when the trial court barred cross-exami-

---

4. For example, we see no reason to believe that the qualities brought to a jury by people over sixty-five cannot be adequately represented by sixty or fifty-five year old jurors.

nation about Pennock's 1965 manslaughter conviction for killing his wife. During Pennock's trial testimony, the trial court granted the State's motion in limine on the ground that a manslaughter conviction may not be used to impeach under Iowa law. Brewer moved to reconsider on the ground that this conviction for shooting his wife was relevant "modus operandi" evidence under our then-recent decision in *Johnson v. Brewer*, 521 F.2d 556 (8th Cir.1975). Brewer makes yet a different argument to this court—that the details of this similar prior felony conviction were relevant to motive because they caused Pennock to fear that he might be accused of murdering Mrs. Edwards, thus giving him an incentive to testify against Brewer. *Compare Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

We agree with the district court that Brewer's Sixth Amendment rights were not violated because "trial counsel was able to bring out through confrontation and cross-examination all of the motives Pennock had for giving false testimony." The jury knew that Pennock had purchased the gun that killed the Edwards, that Brewer was in Pennock's custody the night of the murders, and that Pennock had told inconsistent stories to the authorities before and after Brewer's capture. It was obvious that Pennock would be suspected of the crimes absent his accusation against Brewer. In other words, the previous manslaughter conviction was, at most, only cumulative motive evidence, and very stale cumulative evidence at that. Brewer was not "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Pennock was thoroughly cross-examined about his motive and credibility. Thus, there was no violation of Brewer's Sixth Amendment right of confrontation. *See United States v. Bly*, 464 F.2d 1235, 1237 (8th Cir.1972).

## V.

We have carefully considered the remaining issues Brewer raises on appeal and conclude that they are without merit for the reasons stated by the district court. In addition, none of the trial court rulings of which Brewer complains was "so 'gross' ... 'conspicuously prejudicial' ... or otherwise of such magnitude that it fatally infected the trial and failed to afford [him] the fundamental fairness which is the essence of due process." *Kerr v. Caspari*, 956 F.2d 788, 790 (8th Cir.1992). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

The judgment of the district court is affirmed.